NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**BLACKHAWK NETWORK, INC.,**
*Appellant*

**v.**

**INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC.,**
*Appellee*

———————————

2022-1650

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2020-00084.

———————————

Decided:  June 7, 2023

———————————

ORION ARMON, Cooley LLP, Denver, CO, argued for appellant.  Also represented by SAMUEL WHITT, Washington, DC.

PATRICK D. MCPHERSON, Duane Morris LLP, Washington, DC, argued for appellee.  Also represented by DONALD JOSEPH ENGLISH, PATRICK C. MULDOON.

———————————

2                          BLACKHAWK NETWORK, INC. v.
          INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC.

Before LOURIE, HUGHES, and STARK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Blackhawk Network, Inc. ("Blackhawk") appeals from a final written decision by the United States Patent and Trademark Office Patent Trial and Appeal Board ("the Board") in a post-grant review ("PGR") holding that claims 1–6 of U.S. Patent 10,769,894 (the "'894 patent") are unpatentable as obvious. *See Interactive Commc'ns Int'l, Inc. v. Blackhawk Network, Inc.*, Case No. PGR2020-00084, Paper No. 47, J.A. 1–70 (P.T.A.B. Mar. 15, 2022) (*"Decision"*). We *affirm.*

BACKGROUND

The '894 patent is assigned to Blackhawk and is directed to systems for facilitating the sale and activation of draw-based lottery tickets, which allow purchasers to wager bets regarding a future event such as a random selection of a set of numbers. The tickets disclosed in the '894 patent are pre-printed and may be activated by scanning a bar code on each ticket and transmitting a payment confirmation to a central authority administering the lottery using traditional point-of-sale ("POS") terminals, such as cash registers in grocery store checkout lanes. Once activated, the tickets entitle holders to claim prizes for winning wagers. Independent claim 1 recites providing "payment confirmation for the pre-printed lottery ticket" to a lottery administration system as part of the activation process. '894 patent at col. 10 ll. 41–42. Independent claim 6 contains a similar "payment confirmation" limitation but does not specify providing this confirmation to a lottery administration system. *Id.* at col. 11 ll. 5–6.

Interactive Communications International, Inc. ("InComm") filed a petition for PGR on all claims of the '894 patent. Specifically, InComm alleged that claims 1–6 of the '894 patent would have been obvious at the time of invention over U.S. Patent 7,627,497 ("Szrek").

Szrek describes an approach to activating lottery tickets involving a store's back office, a POS terminal, and a lottery administration system. Szrek's system relies on a printed receipt from the retailer's POS terminal to record and verify that customers have paid for lottery tickets. Unlike the system claimed in the '894 patent, Szrek does not require payment confirmation as part of ticket activation. However, in Szrek, both payment and activation are prerequisites for a ticket's eligibility to win prizes.

The Board found that Szrek's description of the interoperational characteristics of a store's back office, a POS terminal, and a lottery administration system would have suggested to a skilled artisan that a store's back office would provide payment confirmation for the pre-printed lottery ticket to the lottery administration system. *Decision* at 43–44. According to the Board, in Szrek's system, after a store clerk scans a pre-printed lottery ticket at a cash register, the register communicates a request to the store's back office. *Id.* The store's back office then communicates an activation request to the lottery administration system. *Id.* The Board then found that Szrek disclosed that upon receiving the activation request, the lottery administration system determines whether the ticket is eligible to win a prize. *Id.* The Board continued that, under Szrek, the lottery administration system then communicates to the store's back office indicating that the ticket is a winner, and that winner payment is authorized. *Id.*

Because the lottery administration system alone can determine whether a ticket is eligible to win a prize, the Board found that it logically follows that Szrek's lottery administration system possesses the information necessary to establish payment and activation for the ticket. *Id.* at 44. Applying its findings, the Board held that claims 1–6 of the '894 patent would have been obvious over Szrek. *Id.* at 45–46.

Blackhawk appealed the Board's decision to this court. We have jurisdiction under 28 U.S.C. §§ 1295(a)(4)(A).

## DISCUSSION

We review the Board's legal determinations *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings underlying those determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Obviousness is a question of law that "lends itself to several basic factual inquiries," including the scope and content of the prior art, the level of ordinary skill in the art, and differences between the prior art and the claimed invention. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

Blackhawk argues that the Board's findings were not supported by substantial evidence. Specifically, it argues that Szrek's requirement that a customer possesses both the lottery ticket and receipt is fundamentally different from the '894 patent's claimed methods that do not require a customer to possess a receipt. InComm responds that the Board properly found that Szrek's disclosure sufficiently established to a skilled artisan that a store's back office would include an instruction to provide a payment confirmation for the pre-printed lottery ticket to the lottery administration system.

We agree with InComm that the Board's findings were supported by substantial evidence and that Szrek would have rendered claims 1–6 of the '894 patent obvious. The Board found that Szrek taught that both payment and activation must occur for a pre-printed lottery ticket to win a prize. It continued to find that because Szrek taught that from scanning a ticket, the lottery administration system could alone determine whether the ticket was eligible to win a prize, it logically followed that the lottery administration system "possessed the information necessary to establish payment and activation for the ticket . . . when it received the activation request." *Decision* at 44. The Board

BLACKHAWK NETWORK, INC. v.
INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC.

5

then concluded that because the lottery administration system could determine a winning ticket and provide authorization of a winning payment, the store's back office in Szrek must have "provided payment confirmation for the ticket to the [lottery administration] system *before* that determination." *Id.*

The Board properly construed Szrek's disclosure of the inter-operational characteristics of a store's back office, POS terminal, and lottery administration system. Furthermore, the Board properly analyzed how a skilled artisan would have interpreted Szrek's teachings. The Board's findings are supported by substantial evidence and would have rendered the "payment confirmation" limitation in claims 1–6 of the '894 patent obvious. We therefore affirm the Board's holding that claims 1–6 of the '894 patent would have been obvious to a skilled artisan at the time of the invention in view of Szrek.

## CONCLUSION

We have considered Blackhawk's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the Board is *affirmed*.

## AFFIRMED